Larry MORRISON, Petitioner,

v.

Jack DUCKWORTH, Warden, and Indiana Attorney General, Respondents.

No. S 82–44.

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 3, 1982.

**534**

Larry Morrison, pro se.

Linley E. Pearson, Indiana Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

### I.

This cause comes before the Court on the petition for Writ of Habeas Corpus of Larry Morrison. Morrison was charged, by information, with Confinement, Ind.Code 35–42–3–3, and Battery, Ind.Code 35–42–2–1. After a trial by jury, Morrison was convicted of both crimes. The trial court imposed a sentence of two years on the Confinement count and six months on the Battery count.

An appeal was taken to the Court of Appeals of Indiana, Fourth District. That Court affirmed the judgment of the trial court in an unpublished opinion. Morrison then petitioned the Court of Appeals for a rehearing, which was denied. Morrison then filed a petition for transfer with the Supreme Court of Indiana, which was denied without an opinion. The entire state record has been filed and examined here.

In his appeal to the Court of Appeals of Indiana, Morrison raised the following issues:

A. Whether the Trial Court erred in refusing the Petitioner's tendered instruction regarding the defense of voluntary intoxication;

B. Whether the Trial Court erred in allowing into evidence a knife without the establishment of a proper foundation;

C. Whether the Trial Court erred in allowing the use of a pre-trial Deposition of the Victim Gloria Egan, when the Petitioner objected to the use of the Deposition; and,

D. Whether the Trial Court erred in not granting a mistrial during the final argument of the State because of a highly prejudicial statement made by the prosecutor.

In his petition for Writ of Habeas Corpus, Morrison has raised these same issues.

### II.

It is well established that instructions to a jury are matters of State law and procedure. Issues concerning instructions normally do not involve federal constitutional issues. *United States ex rel. Waters v. Bensinger,* 507 F.2d 103 (7th Cir.1974); *Grundler v. North Carolina,* 283 F.2d 798 (4th Cir.1960); *Kearney v. Peyton,* 360 F.2d 589 (4th Cir.1966); *Greyson v. Kentucky,* 333 F.2d 583 (6th Cir.1964); *McDonald v. Sheriff of Palm Beach County,* 422 F.2d 839 (5th Cir.1970).

The trial court refused the petitioner's tendered instruction number three. This instruction dealt with voluntary intoxication and its effect on the specific intent which is a necessary element of the crime. (R–83). The Court of Appeals of Indiana specifically found that the trial court's refusal to read this instruction was proper. The Court found that the record did not show evidence indicating that the defendant was intoxicated to such a degree as to render him incapable of forming the specific intent required to commit the crime. Thus, in accordance with Indiana law, the trial court's refusal to read this instruction to the jury was proper. (See Exhibit A, pages 3–5).

 The record supports the Court of Appeals' determination. The evidence in-

troduced at trial included the testimony of Officer Saxton that the petitioner had alcohol on his breath and had some slight degree of difficulty in walking (R–172–173). Officer Julia Jones' report stated that there were several empty beer cans and bottles in the Appellant's car. (R–214). However, Officer Jones also testified that she chased after the Appellant over rough and bumpy ground on which she had trouble running. (R–211). She testified further that if a man were intoxicated, he would have difficulty running over this ground. (R–212).

A search of the record fails to disclose any evidence that the petitioner was so intoxicated that he was unable to form a criminal intent. Therefore, as the Court of Appeals found, the trial court did not commit error in refusing to give the petitioner's tendered instruction.

 In a habeas action the question before the Court is whether the petitioner alleges a "fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *United States ex rel. Peery v. Sielaff,* 615 F.2d 402 (7th Cir. 1979). The question before this Court thus becomes whether the error in the instructions by itself so infected the entire trial that the resulting conviction violates due process. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *United States ex rel. Peery v. Sielaff, supra.* Where it is the omission of an instruction that is at issue, the petitioner's burden is "especially heavy" because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *United States ex rel. Peery v. Sielaff, supra.*

The State trial court properly refused to submit this instruction to the jury. Even if the trial court did err, it was not such an error as to "result in a complete miscarriage of justice." *Hill v. United States, supra.* The State introduced substantial evidence at trial showing the guilt of the petitioner.

It is very unlikely that the jury's verdict would have been different if the requested instruction had been read.

Since the petitioner has failed to substantiate his "especially heavy" burden of proof, this Court cannot accept jurisdiction over the petitioner's case on the basis of this issue.

### III.

It is well established that "State Court rulings on the admissibility of evidence may not be questioned in federal habeas corpus proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Brinlee v. Crisp,* 608 F.2d 839 (10th Cir.1979); *Gillihan v. Rodriguez,* 551 F.2d 1182 (10th Cir.1976), *cert. den.,* 434 U.S. 845, 98 S.Ct. 148, 54 L.Ed.2d 111; *Maglaya v. Buchkoe,* 515 F.2d 265 (6th Cir.1975), *cert. den.,* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260; *Gemmel v. Buchkoe,* 358 F.2d 338 (6th Cir.1966), *cert. den.,* 385 U.S. 962, 87 S.Ct. 402, 17 L.Ed.2d 306.

The Court of Appeals of Indiana considered this issue and found that the trial court properly admitted the knife into evidence. The evidence introduced at trial showed that the victim stated that the petitioner put a knife to her throat and later threw the knife on the ground outside of the house where she was staying. (R–268). Officer Saxton testified that he and Officer Jones, upon returning to the scene later that morning, found a knife five feet from the house. The knife was located next to where the petitioner's car was parked (R–163). As the Court of Appeals found, "The presence and location of the knife tended to corroborate the testimony of the victim and was therefore relevant."

 It is clear that the introduction of the knife into evidence was proper. It did not render the trial so "fundamentally unfair" as to constitute a denial of federal constitutional rights.

### IV.

 The law of the State of Indiana specifically provides for the use of depositions

in criminal trials when the State had subpoenaed and diligently searched for a missing witness. Indiana Trial Rule 32(A)(3)(d). The petitioner has stipulated to the fact that the witness, Gloria Egan, had been subpoenaed, was missing and that the State diligently searched for Ms. Egan. (R–236). Therefore, as the Court of Appeals found, the use of this deposition at the petitioner's trial was proper.

The federal courts also allow the use of depositions in criminal trial. Rule 15 of the Federal Rules of Criminal Procedure provides:

(E.) Use. At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness is unavailable, as unavailability is defined in Rule 804(A) of the Federal Rules of Evidence, . . .

(A) Definition of unavailability. "Unavailability of a witness" includes situations in which the declarant:

(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means.

Under these rules, the deposition of Gloria Egan would have been admissible had the petitioner been tried in federal court.

The deposition of Gloria Egan was taken at the request of the petitioner. He was able to confront the witness and make any inquiries which he deemed necessary. The petitioner has not shown how his constitutional rights were violated by the use of this deposition nor that he was prejudiced by its use.

### V.

During the trial of this cause, the petitioner orally made a Motion in Limine seeking to prevent the prosecutor from introducing any evidence of any threats which were made to the witness, Gloria Egan. (R–239). Apparently, the petitioner was attempting to prevent the jury from hearing any evidence concerning the fact that Miss Egan's absence from the trial may have been caused by the petitioner's threats. The motion in limine was granted. (R–240).

During closing argument, the prosecutor made the following statement:

"On ___ I want to remind you of one thing, too. Gloria Egan is seventeen years old. She's a young girl. Look at that man over there. You don't think she was under some pressure that night? You don't think she's under some pressure now? (R–291).

The petitioner objected to this statement and asked for a mistrial due to the prejudicial effect of the statement. (R–292). The court denied this motion for a mistrial.

The Court of Appeals found that "this reprehensible conduct by the prosecution is no less than shocking". (See Exhibit A, page 9). It is clear that this statement was improper. However, the Court of Appeals refused to reverse the conviction on this ground, holding:

"After a review of the record in the present case, we are unable to conclude the Trial Court erred by refusing the defendant's request for a mistrial. It is entirely likely that in view of the overwhelming evidence of guilt in this case, the trial court determined the probable persuasive effect of the prosecutor's statement to be minimal." (See Exhibit A—page 9–10).

The issue of the prejudicial impact of admittedly improper prosecutorial statements was addressed by the Supreme Court of the United States in *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). In that case, the Supreme Court agreed with the Supreme Judicial Court of Massachusetts that the prosecutor's conduct during closing arguments was improper. However, the Court found that the statements made by the prosecution were not so prejudicial as to require a reversal.

*Donnelly* held that in a habeas proceeding, more than undesirability or even "universal condemnation" of the prosecu-

tor's misconduct must be shown. Unless a specific guarantee of the Bill of Rights is involved, it must be shown that the remarks were so prejudicial that they rendered the trial fundamentally unfair.

Petitioner does not allege a violation of an enumerated constitutional right resulting from the improper prosecutorial statements. Instead, petitioner argues that the prosecutor's comments had a probable persuasive effect on the jury which placed the petitioner in "grave peril sufficient to warrant reversal." (Brief of Appellant, page 17).

The "grave peril" standard is that by which the Indiana State Appellate Courts judge prosecutorial misconduct. That stand, first enunciated in *Maldonado v. State,* 265 Ind. 492, 355 N.E.2d 843 (1976), and most recently affirmed in *Hubbard v. State,* Ind., 437 N.E.2d 52 (1982), requires that the appellate tribunal consider

> Whether the misconduct, under all the circumstances, "placed [the defendant] in a position of grave peril to which he should not have been subjected." [citations omitted] The "grave peril" standard does not require the Court to find that the misconduct determined the outcome of the trial
>
> \* \* \* \* \* \*
>
> Whether the misconduct results in subjecting the defendant to "grave peril" is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct.

*Maldonado v. State, supra,* 355 N.E.2d at 848. This standard is in line with that set forth in *United States v. Corona,* 551 F.2d 1386 (5th Cir.1977). "The test is whether the prosecutor's argument, taken as a while in context of the entire case, prejudicially affects substantial rights of the defendant." *Id.,* at 1388.

The seminal case in this circuit addressing the issue of prosecutorial misconduct is that of *United States v. Rodriguez,* 627 F.2d 110 (7th Cir.1980). Although that case involved a direct appeal and not a petition for writ of habeas corpus, the language of the Court at page 113 of the opinion is relevant:

An arguably improper remark will require determination of its probable effect on the jury in combination with all the evidence presented. If the evidence of guilt is sufficient to find beyond a reasonable doubt that the error was harmless, reversal may not be required.

See also, *United States v. Hastings,* 660 F.2d 301 (7th Cir.1981); *United States v. Wilkins,* 659 F.2d 769 (7th Cir.1981).

■ Where the case involves a petition for writ of habeas corpus as opposed to a direct appeal, the habeas court must first determine whether the prosecutorial misconduct constituted constitutional error. See, e.g., *United States ex rel. Smith v. Franzen,* 660 F.2d 237 (7th Cir.1981). If the habeas court concludes that the prosecutor's improper remarks did indeed constitute constitutional error, the standard to be applied is a strict one.

A constitutional error will not be found harmless unless the court determines that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). "[U]nless there is a reasonable probability that the improperly admitted [questions] contributed to the conviction, reversal is not required." *Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972).

*United States ex rel. Allen v. Franzen,* 659 F.2d 745 (7th Cir.1981).

■ If, on the other hand, the habeas court concludes that the prosecutorial misconduct does not rise to the level of constitutional error, the habeas court should apply the state's harmless error rule. See, generally, *Chapman v. California,* 386 U.S. 18 at 21–22, 87 S.Ct. 824 at 826–827; *Donnelly v. DeChristoforo, supra,* 416 U.S. at 643, 647–48, 94 S.Ct. at 1871, 1873–1874.

■ The case here on prosecutorial misconduct is a close one. This Court agrees with the Court of Appeals that the prosecutor's remarks were shocking and reprehensible. However, this Court cannot conclude that the errors complained of rises to the

538

level of a constitutional error. The language of *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973) is appropriate:

> Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

*Id.,* at 146, 94 S.Ct. at 400, as quoted in *Donnelly v. DeChristoforo, supra,* 416 U.S. at 642–43, 94 S.Ct. at 1871. Therefore, this Court concludes, after carefully reviewing the entire record, that the overwhelming evidence presented at petitioner's trial renders the prosecutor's improper remarks harmless under the state of Indiana's harmless-error rule.

For the above stated reasons, the writ will be DENIED and probable cause will be certified. SO ORDERED.