UNITED STATES of America ex rel. Gilbert CRIST, Petitioner,

v.

Michael LANE, Respondent.

No. 83 C1339.

United States District Court, N.D. Illinois, E.D.

Aug. 5, 1983.

James J. Doherty, Public Defender of Cook County, Hugh Stevens, Asst. Public Defender, Chicago, Ill., for petitioner.

Neil F. Hartigan, Atty. Gen. of Ill., David E. Bindi, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Gilbert Crist ("Crist"), a prisoner at the Pontiac Correctional Center, brings this habeas corpus proceeding under 28 U.S.C. § 2254 against Illinois Department of Corrections Director Michael Lane ("Lane"). Crist's habeas petition asserts the state prosecutor at his trial infringed his Fifth Amendment rights against self-incrimination by commenting on his refusal to testify. Each side has filed a motion for summary judgment. For the reasons stated in this memorandum opinion and order, Lane's motion is granted and Crist's is denied.

### Facts

There is no dispute as to any of the relevant facts. But to insure all reasonable inferences are indulged in Crist's favor,[1] this Court will adopt the factual account presented by Crist in the "Statement of Facts" section of his state appellate brief (at 7–8):

> At approximately 5:30 p.m. on June 27, 1980 Anthony Russell was accosted by a man in the front hall of a Chicago housing project building at 1510 West 13th Street. (R. 96, 115–116) Russell testified it was a sunny day and the lights were on in the building. (R. 97–98) Russell was carrying a bag of clothing belonging to his girlfriend, who was then upstairs. (R. 96, 127)
>
> Russell had just entered the building when he heard a voice say, "stop, come here." (R. 97–98) He turned around and saw a man about five feet away walking toward him and pointing a gun at him. (R. 98–99) Russell immediately threw the bag at the man and ran to the rear entrance. (R. 101, 122–123) Russell testified it would be fair to say he only got a quick glimpse of the man and it really wasn't enough time for him to get a good look. (R. 128–131) At the same time, he testified that the gun was a .22 caliber pistol, kind of old looking, with paint chipped off the barrel. (R. 99–100)
>
> As Russell ran to the rear entrance of the building, he heard four or five shots. (R. 102) He ran out the rear entrance, heard another shot, and felt a pain in his back. (R. 102) Russell kept on running until he was about 100 feet from the building where he thought he was out of the range of fire. (R. 123–124) At that time, he felt very nauseated and dizzy. He had a pain in his back and a lump in his stomach. Blood was coming out of his mouth. (R. 103, 124)
>
> Russell turned around to go back to the building and saw the offender come out. (R. 104) The man shouted "get some business," fired twice in the air, and ran off carrying the bag that Russell had thrown at him. (R. 105, 125) Russell testified he got about a 10 second look at the man outside the building. (R. 105)
>
> After the offender ran off, friends of Russell's named Drew and Michael Lee helped Russell back into the building where he fell down. (R. 105–106, 124, 126) Drew and Lee had seen the whole thing. (R. 126) Sometime later, the police arrived and took Russell to the hospital. (R. 106)

Russell later identified Crist as his assailant at a police lineup.

---

1. This is done in light of the already-stated decision, for Crist is the party opposing the successful summary judgment motion.

Crist was tried by a jury on seven counts: attempt murder, armed robbery, armed violence and four counts of aggravated battery. At the trial Russell and two police officers testified for the state. As was its right, the defense then rested without presenting any evidence.

During his initial closing argument, prosecutor Wadas commented, "It's uncontradicted and undenied [Russell] saw the defendant three times..." (R. 197). Crist's trial counsel Fox then said in his closing argument:

[A] person charged with a crime does not have to testify. Gilbert Crist didn't testify in this case. You promised that you would not hold that against him. But remember this, ladies and gentlemen, Gilbert Crist pled not guilty in this case. He didn't have to plead not guilty. He could have pled guilty but chose to plead not guilty and by that fact alone he's telling you that he did not commit these crimes. (R. 204–05)

During Wadas' rebuttal, the following colloquy took place:

MR. WADAS: You will see how the defense has twisted words to their advantage. The defense lawyers told you that the defendant has a right not to testify and they are correct. But then they twisted words when he told you by pleading not guilty, in effect, the defendant was testifying and saying he did not commit the crime.

MR. FOX: Objection, Judge.

MR. WADAS: That was Mr. Fox testifying. That was not the defendant testifying. That was Mr. Fox testifying.

THE COURT: Overruled.

MR. WADAS: The defendant did not testify. Mr. Fox testified. That's a word twisting game. (R. 224)

Crist was convicted on all seven counts and was sentenced to concurrent 20-year terms on the counts of attempt murder, armed robbery and armed violence, and five years on each count of aggravated battery. On direct appeal Crist's counsel failed to mention his habeas claim in his appellate briefs. However, at the beginning of oral argument he did assert the constitutional impropriety of the quoted portions of Wadas' remarks in his rebuttal argument (Stevens Aff. ¶ 8). Counsel also apprised the Illinois Appellate Court those remarks "echoed" Wadas' earlier comment as to Russell's uncontradicted testimony that he saw Crist three times (Stevens Aff. ¶ 9).

In affirming Crist's conviction, the Appellate Court found no reversible error in the "several instances of allegedly improper comments by the prosecutor." *People v. Crist,* 108 Ill.App.3d 1208, 68 Ill.Dec. 583, 446 N.E.2d 317 (1st Dist.1982). Though the Court did not specifically identify those "allegedly improper comments," its analysis clearly indicates Wadas' comments attacked by Crist's habeas petition were among those considered:

1. To support its ruling, the court invoked the well-settled legal principle "[a]ny possibility of prejudice was corrected by prophylactic instructions by the trial court...." It cited inter alia I.P.I. Criminal No. 204.

2. That jury instruction provides: "The fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict."

On November 30, 1982 the Illinois Supreme Court denied Crist's Petition for Leave To Appeal. Crist then brought this habeas proceeding.

### Summary Judgment

To win on the cross summary judgment motions, Crist must prevail on three issues:

1. whether Crist waived his habeas claim by failing (adequately) to raise it on direct appeal;

2. whether Wadas' remarks in closing argument improperly referred to Crist's failure to testify, thereby infringing Crist's Fifth Amendment rights against self-incrimination; and

3. whether any intrusion into Crist's Fifth Amendment rights was harmless beyond a reasonable doubt.

Because the second issue must be resolved in Lane's favor as a matter of law, this Court will not address the other two issues.

■ Neither of Wadas' comments at issue implicated Crist's Fifth Amendment rights. As for his describing Russell's testimony as "uncontradicted and undenied"—an *indirect* or arguably inferential, rather than a direct, reference to Crist's failure to testify[2]—our Court of Appeals has stated the operative test several times in recent years. In *United States v. Buege,* 578 F.2d 187, 188–89 (7th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978) the Court said:

> Indirect comments such as the prosecutor's references in this case to "uncontradicted testimony" constitute error when the statements are "manifestly intended to be or [are] of such a character that the jury [will] naturally and necessarily take [them] to be comment on the defendant's failure to testify." *United States v. Lyon,* 397 F.2d 505, 509 (7th Cir.), *cert. denied,* 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968). This court has previously held that when a prosecutor refers to testimony as uncontradicted where the defendant has elected not to testify and when he is the only person able to dispute the testimony, such reference necessarily focuses the jury's attention on the defendant's failure to testify and constitutes error. *United States v. Handman,* 447 F.2d 853, 855 (7th Cir.1971). *See United States v. Poole,* 379 F.2d 645, 649 (7th Cir.1967).

>     *     *     *     *     *     *

We find, therefore, that the prosecutor committed error by repeatedly depicting testimony as uncontradicted where it was highly unlikely that at least a portion of the testimony could have been contradicted by anyone other than the defendant.

And most recently in *United States v. Hastings,* 660 F.2d 301, 303 (7th Cir.1981), *rev'd on other grounds sub nom. United States v. Hasting,* —— U.S. ——, —— – ——, 103 S.Ct. 1974, 1976–78, 76 L.Ed.2d 96 (1983), the Court cited and quoted the same *Buege* language for the same proposition. *Cf.* Justice Stevens' concurring opinion in *Hasting,* —— U.S. at ——, 103 S.Ct. at 1983–84, emphasizing that the evidence characterized as "uncontradicted" by the prosecutor "could have been addressed by *defense witnesses* and defense counsel even without testimony by the defendants themselves" (emphasis added).

In this case Crist concedes at least two other eyewitnesses were in a position to contradict Russell's account of the shooting: Drew and Michael Lee. Under the *Buege-Hastings* standard, Wadas' indirect comment did not "necessarily focus[ ] the jury's attention on [Crist's] failure to testify . . . ." Consequently Crist's right against self-incrimination was not impaired by Wadas' assertion during his initial closing argument.

■ As for Wadas' rebuttal remarks, the "invited response" doctrine (also known as the "invited error" rule) defeats Crist's Fifth Amendment challenge. Under that concept, "where defense counsel makes statements and closing argument that invite the government to respond, the prosecutor may, on rebuttal, enter into areas that would otherwise constitute improper argument."[3] As will be recalled Wadas mentioned Crist's failure to testify in an effort to rebut Fox's argument that a *testimonial* assertion of innocence could be inferred from Crist's plea of not guilty. In that context Wadas' reference to Crist's silence was certainly "invited" by defense counsel.[4] Indeed even Wadas' final argu-

---

**2.** Any direct reference to such failure is constitutional error under *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

**3.** In the absence of any authority finding that doctrine inapplicable in this Fifth Amendment context, this Court declines Crist's invitation to do so.

**4.** Crist's citations to the contrary are unpersuasive:

> (a) *United States ex rel. Mitchell v. Pinto,* 438 F.2d 814, 818 (3d Cir.1971) held the invited error rule did not give the prosecutor license to encourage the jury "incorrectly and prejudicially [to] characterize the defendant's silence as evidence of guilt." But that

ment (though this Court does not mean to give it sanction) itself referred in terms both to the fact "the defendant has a right not to testify" and to defense counsel's correctness in so stating.

### Conclusion

There is no genuine issue of fact, and Lane is entitled to judgment as a matter of law. Lane's motion for summary judgment is therefore granted, and Crist's motion is denied.

---

unexceptionable holding certainly cannot be invoked to preclude Wadas from countering Fox's effort to extract a *favorable* inference from Crist's silence.

(b) *Schultz v. Yeager,* 293 F.Supp. 794, 805 (D.N.J.1967), *aff'd,* 403 F.2d 639 (3d Cir.1968)

is plainly distinguishable because in that case it was the prosecutor and the judge—not defense counsel—who first raised the comment issue.