**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Larry HANDMAN, Defendant-Appellant.**

**No. 18736.**

United States Court of Appeals,
Seventh Circuit.

July 21, 1971.

Julius L. Echeles, Patrick A. Tuite, Frederick F. Cohn, Chicago, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., Ronald A. Lebowitz, Jeffrey F. Arbetman, Asst. U. S. Attys., E. St. Louis, Ill., for plaintiff-appellee.

Before KILEY and CUMMINGS, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

KILEY, Circuit Judge.

Defendant Handman was convicted of violation of 21 U.S.C. § 176a[2] on proof of his intentional receipt and concealment of marihuana, knowing of its unlawful importation into the United States. He received a five year sentence and has appealed. We reverse and remand for new trial.

While Handman was vacationing in Mexico in January, 1969, a package addressed from Jill Hampton, Acapulco, Mexico, to Judy Rome, c/o Jerry Solomon, 22 Malibu Village, Carbondale, Illinois, was delivered to a customs inspector in Houston, Texas. It was opened and contained what appeared to be marihuana.[3]

The package eventually arrived at the Carbondale Post Office and a postal notice to that effect was left at the Malibu Village address, a trailer which co-student Jerome Solomon shared with Handman while attending Southern Illinois University. Solomon and a friend, Cathy Secrest, subsequently drove to the Post Office where she picked up the package at his request. After driving the girl home, he returned to the Malibu Village address and placed the marihua-

---

1. Senior Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

2. 21 U.S.C. § 176a reads as follows:
   Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marijuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law. * * *
   * * *
   As used in this Section, the term "marihuana" has the meaning given to such term by Section 4761 of the Internal Revenue Code of 1954.

3. The parties stipulated as follows:
   It is stipulated and agreed by the defendant and the Government that a duly qualified chemist has examined Government Exhibit Number 1, consisting of approximately 690 grams of dried green vegetable substance, and if he were here, he would testify that the said substance is in fact, marijuana.

na in the trunk of Handman's car which he had been asked to use during Handman's Mexican vacation. Solomon was later arrested [4] and told the agents where the package was.

As the government's chief witness, Solomon testified that Handman called him collect from Acapulco and told him that a parcel containing marihuana would be coming in the mail, addressed to Judy Rome. In his closing argument the government attorney told the jury that the case turned on Solomon's testimony which "went virtually unchallenged" and that in the "important areas," Solomon's testimony was "uncontradicted." The court denied Handman's attorney's motion for a mistrial [5] without a prompt caution to the jury to disregard the argument.

■ Handman contends that the government's reference to Solomon's testimony was a comment upon his failure to testify and rebut the Solomon testimony [6] in violation of his Fifth Amendment right not to testify. The government concedes its argument to be that Solomon's testimony "remained intact, unchallenged and uncontradicted" but claims that the reference was to defense cross-examination of Solomon. Furthermore, it contends that even if considered as a comment on Handman's failure to testify, the error is harmless under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We hold this claim to be without merit and that the government's argument, was prejudicial error—aggravated by other improper argument.

■ In argument to the jury the government noted that the case against Handman turned upon Solomon's testimony. There was other incriminating evidence, but Solomon's testimony of the telephone conversation with the defendant tied Handman to the offense charged. And there is nothing in this record to show that anybody but Handman could have challenged or contradicted Solomon's vital testimony. Desmond v. United States, 345 F.2d 225 (1st Cir. 1965); see United States v. Poole, 379 F.2d 645, 649 (7th Cir. 1967). A cautionary instruction should have been given by the court promptly to erase any prejudice harbored by the jury because of Handman's failure to challenge or contradict Solomon's testimony. Id., 345 F.2d at 226–227; see Rodriguez-Sandoval v. United States, 409 F.2d 529, 530 (1st Cir. 1969). The general instruction given at the close of evidence would most likely be ineffective for that purpose.

■ It is of no aid to the government that the reference here is less direct than in the Chapman argument, or argument in other cases. Prejudicial argument is not confined to instances where the government states explicitly "one way or the other about the defendant not testifying" as in the argument in Rodriguez-Sandoval v. United States, 409 F.2d 529, 530 (1st Cir. 1969) or in Chapman v. California, 386 U.S. at 27, 87 S.Ct. 824. Neither is prejudice limited to instances where precise or certain words or phrases are used. If what was said in argument could reasonably be taken as comment upon Handman's right not to testify and thus used to support Solomon's credibility, the argument is improper. Rodriguez-Sandoval, 409 F.2d at 531. We think the argument before us could reasonably have had that effect upon the jury.

■ We are not persuaded by the government that the error was

---

4. Solomon was indicted but upon his agreement to testify, the charge was dropped.

5. The mistrial motion was expressly directed at the prosecutor's telling the jury his personal opinion of Solomon's veracity. But since Solomon's veracity is implicit in Handman's Fifth Amendment

right argument that Solomon's testimony was unchallenged and uncontradicted by Handman, we see no need of applying the plain error rule to decide this question.

6. He did testify in a perfunctory way, but not as to his guilt or innocence.

harmless [7] under *Chapman,* or Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). There is no showing of and "overwhelming" government case against Handman. The testimony of Solomon alone linked Handman to the alleged crime. Solomon was not a witness above reproach and the charge against him had been dropped in return for his testimony. And the government attorney took the risk in argument that the trial would be rendered unfair. As Judge McEntee observed in *Rodriguez-Sandoval,* 409 F.2d at 531, " * * * one who attempts to define exactly the edge of the precipice approaches at his peril."

Another related error occurred in the closing argument. The government attorney stated that (a) "If the government felt that he (Solomon) would tell anything other than the truth, he would not have taken the stand." The court sustained the objection of Handman's attorney and instructed the jury to disregard the remarks. The argument proceeded to the "virtually unchallenged" and "uncontradicted" references (discussed *supra*) and then on to statements that Handman's attorney "totally avoided" cross-examination about "important areas" of Solomon's testimony; and (b) "for good reason because *they are true,*" and "Handman knows the *truth* of Mr. Solomon * * *" (Emphasis added.) Although the court sustained a defense objection to the argument in (a) above, the statements in (b) followed. We think that the government's argument in (b) about the "truth" of Solomon's testimony aggravated the improper comments on Handman's exercise of his Fifth Amendment right.

██ There was no evidence as to Solomon's credibility. The argument effectually introduced the prosecutor's opinion instead. It implied that the government had run a check on Solomon and determined he was speaking the truth. Gradsky v. United States, 373 F.2d 706, 710 (5th Cir. 1967). The personal opinion of a prosecutor is not an issue for the jury. Greenberg v. United States, 280 F.2d 472, 474–475 (1st Cir. 1960); Hall v. United States, 419 F.2d 582, 586 (5th Cir. 1969). *See* Dunn v. United States, 307 F.2d 883, 885–886 (5th Cir. 1962); see also this court's opinion in United States v. D'Antonio, 362 F.2d 151, 155 (7th Cir. 1966).

██ The question is not whether the prosecutor meant "to insinuate" that his statement was based on personal knowledge. The question is what the jury probably thought. And the cross-examination by Handman's attorney to discredit *Solomon does not justify the prosecutor's replying by improper argument.*

██ Since a new trial is granted we do not decide whether the evidence was sufficient to support the verdict. We think, however, both the stipulation that the package contained marihuana and the testimony that the contents "appeared to be marijuana" were sufficient prima facie evidence of that element of the charge. We cannot anticipate that other asserted errors, if substantial, will recur on retrial.

Reversed and remanded for a new trial.

---

7. We think it is useful to again refer to Justice Clark's remarks in United States v. Jackson, 429 F.2d 1368, 1373 (7th Cir. 1970), about "harmless error" claims swarming about like bees.